**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1279-22

JOHN H. COXE, JR.,

     Plaintiff-Appellant,

v.

CAESARS ENTERTAINMENT
CORP.,ITS AGENTS, SERVANTS
AND EMPLOYEES, HARRAH'S
ATLANTIC CITY OPERATING
COMPANY, LLC, and DANIEL
MCNAIR,

     Defendants-Respondents.

_____

           Submitted February 27, 2024 – Decided August 29, 2024

           Before Judges Sumners and Smith.

           On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-0187-20.

           Robert Hensler, LLC, attorneys for appellant (Robert Hensler, on the briefs).

Reilly, McDevitt & Henrich, P.C., attorneys for respondents (Michael J. Jubanyik and Jessica Injaian on the brief).

PER CURIAM

After a defense verdict in a personal injury jury trial, plaintiff John H. Coxe, Jr. appeals the trial court's order of judgment dismissing his complaint. Coxe filed a complaint against Harrah's Atlantic City Operating Company, LLC (Harrah's), alleging that he sustained injuries as a result of being improperly detained by Harrah's security team. We affirm.

Plaintiff and his girlfriend, Valerie Kloepping, visited Harrah's on October 18, 2018. Coxe, a retired, disabled veteran of the Coast Guard and Navy, was a regular patron of Harrah's for many years. On the day of their visit, Coxe and Kloepping went to the resort pool at around 3:00 p.m. Coxe gave his credentials—his driver's license, room key, and Harrah's rewards card—to the bartender to start a tab. Coxe and Kloepping remained at the pool until around 9:00 p.m., and during the approximately six hours spent at the pool ordered four "buckets" of beer, each containing five beers.

When Coxe attempted to close his tab, the bartender told him his credentials could not be located. Coxe became irate, his anger driven in part by an incident approximately one month earlier in which an unknown person

2

accessed his Harrah's hotel room and stole money. Coxe, concerned he was being robbed again, demanded to speak with a resort supervisor or police.

A Harrah's security guard that responded to the pool area testified he observed Coxe yelling at the pool manager for five to ten minutes, and that Coxe was "belligerent, clearly intoxicated, [and] aggressive." Attempts by security to de-escalate the situation failed. Harrah's staff eventually located Coxe's credentials, which had been left in a check presenter, and returned them to Kloepping who in turn showed them to Coxe. However, Coxe did not calm down despite the return of his credentials and Kloepping's urging.

Harrah's security repeatedly asked Coxe to leave the pool now that his credentials had been returned. Coxe refused and instead continued to argue with staff. Approximately eighteen minutes after Coxe first confronted bar staff regarding his credentials, security guards physically restrained Coxe in order to remove him from the pool area. Security personnel placed Coxe face down on the ground and handcuffed him. When two security guards began to drag Coxe towards the exit, the friction caused his swimsuit to slip down. Security adjusted Coxe's swimsuit and escorted him to Harrah's holding cells. Coxe was detained there until Atlantic City police responded, at which time he was released and taken to the hospital.

3

Coxe filed suit seeking damages under theories of negligence, assault, false arrest, and malicious prosecution. Prior to trial, Coxe motioned to compel discovery of, among other things, security camera footage he alleged was not disclosed. The trial court ordered defendant to verify whether additional footage existed and, if so, to provide it to Coxe. If the footage did not exist, defendant was instructed to provide a certification explaining why the footage did not exist.

Defendant moved for summary judgment, which was granted as to the malicious prosecution claim. The parties proceeded to a jury trial on the remaining claims. After the close of evidence but before the jury began deliberating, defendant moved for a directed verdict as to plaintiff's negligence claim. The trial court granted the motion, which was unopposed. On the remaining claims of assault and false imprisonment, the jury returned a verdict for defendant, finding no cause of action.

"We review de novo an order granting a motion for judgment under Rule 4:40-1." Est. of Barbuto v. Boyd & Boyd, 462 N.J. Super. 580, 587 (App. Div. 2020). "We accept as true all evidence supporting the position of the party opposing the motion and accord that party the benefit of all inferences that can reasonably and legitimately be deduced therefrom." Ibid.

(citing Smith v. Millville Rescue Squad, 225 N.J. 373, 379-80 (2016)).  "A judge is not to consider 'the worth, nature or extent (beyond a scintilla) of the evidence,' but only review 'its existence, viewed most favorably to the party opposing the motion.'"  Lechler v. 303 Sunset Ave. Condo. Ass'n, Inc., 452 N.J. Super. 574, 582 (App. Div. 2017) (quoting Dolson v. Anastasia, 55 N.J. 2, 5–6 (1969)).

We are mindful in our review that "[a] jury verdict is entitled to considerable deference."  Dutton v. Rando, 458 N.J. Super. 213, 224 (App. Div. 2019) (quoting Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 521 (2011)).  "[A] trial court should not interfere with a jury verdict unless the verdict is clearly against the weight of the evidence."  Ibid. (quoting Caldwell v. Haynes, 136 N.J. 422, 432 (1994)).  To overturn a jury verdict, "[t]he verdict must shock the judicial conscience."  Ibid. (quoting Caldwell, 136 N.J. at 422).

Plaintiff first contends that the trial court erred by granting defendant's directed verdict motion as to the negligence claim.  Coxe asserts negligence was established by the testimony of Steven Carfora, one of the security guards, who said that he approached Coxe to place him in an escort hold, and that he wasn't sure if Coxe physically touched him.  Coxe contends this

5

testimony is significant, because it is inconsistent with de-escalation or reasonable behavior by security.

To prevail on a claim of negligence, a plaintiff must establish four elements: (1) the defendant owed a duty of care; (2) the defendant breached that duty; (3) actual and proximate causation; and (4) damages. Fernandes v. DAR Dev. Corp., 222 N.J. 390, 403–04 (2015).

Here, the trial court properly granted defendant's motion. When plaintiff conducted a direct examination of Carfora as part of his affirmative case, the scope of questioning included the guard's training and job requirements. However, plaintiff failed to introduce evidence which established a standard of care for Harrah's security guards. There was no evidence presented at trial from which a jury could infer how a reasonable security guard would act under the circumstances. There was no basis for a jury to find the act of approaching a disorderly patron to remove that person from the premises was negligent conduct. Additionally, Coxe's argument that Carfora was unnecessarily aggressive is undermined when placed in the context of his complete testimony. Carfora's testimony included: attempts at de-escalation had been futile; Coxe was intoxicated, belligerent and aggressive; and Coxe had repeatedly refused requests to leave.

6

Coxe next argues that the court erred by requiring an expert to testify to the standard of care, and that the circumstances in this case are within the ken of the average juror. We disagree. While the court repeatedly stated that plaintiff may wish to retain an expert to establish a standard of care, it did not compel such a requirement. In a pre-trial conference, the court stated, "I didn't preclude you from questioning them about their policies and their conformance therewith, but I think . . . you would need an expert to establish the existence of duty." The court gave plaintiff an opportunity to prove negligence without an expert. As such, the court's grant of a directed verdict was proper.

Plaintiff's remaining arguments lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E). We briefly note that the plain error standard under Rule 2:10-2 requires us to "determine whether any error . . . was 'of such a nature as to have been clearly capable of producing an unjust result.'" Toto v. Ensuar, 196 N.J. 134, 144 (2008) (quoting Mogull v. CB Com. Real Est. Grp., Inc., 162 N.J. 449, 464 (2000)); see also T.L. v. Goldberg, 238 N.J. 218, 232 (2019). "If not, the error is deemed harmless and disregarded." Toto, 196 N.J. at 144. "Relief under the plain error rule, R[ule] 2:10-2, at least in civil cases, is discretionary and

A-1279-22

'should be sparingly employed.'" Baker v. Nat'l State Bank, 161 N.J. 220, 226 (1999) (quoting Ford v. Reichert, 23 N.J. 429, 435 (1957)). Plaintiff did not raise his remaining arguments below, consequently we use the plain error standard. We easily conclude that these contended errors were not "of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1279-22